**2014 BNH 015**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br><br>Patricia A. Vilela,<br>        Debtor<br><br><br>Olga L. Gordon, Chapter 7<br>Trustee of Patricia A. Vilela,<br>        Plaintiff<br><br>v.<br><br>Anthony L. Vilela,<br>        Defendant | Bk. No. 11-13823-JMD<br>Chapter 7<br><br><br><br><br><br><br><br>Adv. No. 12-1077-JMD |

*Keri L. Wintle, Esq.*
*Olga L. Gordon, Esq.*
*Murtha Cullina LLP*
*Boston, Massachusetts*
*Attorneys for Plaintiff*

*Anthony L. Vilela*
*Bedford, New Hampshire*
*Pro Se Defendant*

### MEMORANDUM OPINION

**I.     INTRODUCTION**

Olga L. Gordon (the "Trustee"), the chapter 7 trustee for the bankruptcy estate of Patricia A. Vilela (the "Debtor"), brought an action under 11 U.S.C. §§ 542, 548(a)(1)(B), and 550(a)(1) seeking to recover a transfer made to the Debtor's former father-in-law, Anthony L. Vilela (the "Defendant"), on April 19, 2011.  The Trustee alleges in Count I of her amended complaint that

property of the Debtor in the amount of $36,674.26[1] was transferred to the Defendant within the two years of the Debtor's bankruptcy filing on October 17, 2011 (the "Petition Date"), for which the Debtor received less than reasonably equivalent value in exchange, and at which time the Debtor was insolvent or became insolvent as a result.[2]  The Court held a trial and took the matter under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

On or about February 28, 2000, prior to marrying Stephen A. Vilela ("Stephen"), the Debtor purchased property at 29 Bourbon Street in Bedford, New Hampshire (the "Bourbon Street Property"), for a price of $217,000.00.  In May 2002, the Debtor and Stephen married.

In 2004, the Debtor and Stephen found another home in Bedford, New Hampshire, located at 70 Colonel Daniels Drive that they wanted to purchase (the "Colonel Daniels Drive Property").  The purchase price was $687,000.00.

---

[1] In her amended complaint, the Trustee sought to avoid a transfer of $73,348.52 to the Defendant, which represents the total proceeds the Defendant received from the real estate closing of the sale of the Debtor's residence.  During the summary judgment phase of the case, the Trustee conceded that the Defendant was entitled to receive $36,674.26 on account of his claim against his son's one-half interest in the property.  For that reason, at trial, the Trustee pursued only the transfer of the Debtor's one-half interest in the sale proceeds, or $36,674.26.  See Chapter 7 Trustee's Memorandum of Law in Support of Her Objection to Defendant's Motion for Summary Judgment and Request for the Entry of an Order Pursuant to Fed. R. Civ. P. 56(g) at 2 n.2 (Doc. No. 40).

[2] The Trustee's amended complaint also contained a second count under § 542 of the Bankruptcy Code.  The Trustee did not pursue her claim for turnover at trial.  Accordingly, the Court will not address that claim in this memorandum opinion.

The Debtor listed the Bourbon Street Property for sale at $417,000.00; she got no offers and then lowered the price. The Debtor ultimately sold the Bourbon Street Property to the Defendant and Nancy Vilela, her then in-laws, for a purchase price of $380,000.00, which the Defendant paid on August 16, 2004, with a check made payable to the Debtor.

The Debtor used some of the proceeds from the sale of the Bourbon Street Property to purchase the Colonel Daniels Drive Property. The balance of the $687,000.00 sales price was funded with an additional cash down payment of $150,000.00 from the Defendant (via a check made payable to Stephen dated August 16, 2004) as well as the proceeds of a promissory note, executed by the Debtor and Stephen, as co-borrowers, in the amount of $430,000.00 to Wells Fargo Bank, N.A. ("Wells Fargo") secured by a mortgage on the Colonel Daniels Drive Property. The Debtor and Stephen purchased the Colonel Daniels Drive Property on or about September 2, 2004, as joint tenants with the right of survivorship.

The Defendant contends that the $150,000.00 represented a loan. The Debtor contends that the amount represented a gift. A handwritten "Loan Agreement with Property As Collateral" dated July 23, 2004 (the "Note"), was executed by the Defendant and his son, but not by the Debtor. The Note stated that the Defendant "agree[s] to loan my son Stephen Vilela the sum of $150000.00 to be used as a down payment on a house located at 79 Colonel Daniels [D]rive, Bedford, New Hampshire, which he intends to buy as a family home." It also provided that Stephen "agree[s] to repay the loan in full when an increase in value allows me to take a second mortgage, or from closing proceeds when the property is sold, whichever occurs first." The Note contained no other repayment terms. The Note was not secured by a mortgage at that time.

3

On January 8, 2008, the Debtor and Stephen, as co-borrowers, executed a mortgage to secure the repayment of a home equity line of credit in the amount of $50,000.00 in favor of TD Banknorth ("TD Bank"). Stephen did not repay his father at the time the TD Bank mortgage was granted, despite the terms of the Note.

In 2010, the Debtor and Stephen started divorce proceedings. In the fall of 2010, they decided to sell the Colonel Daniels Drive Property.

On February 16, 2011, Stephen executed a mortgage on his interest in the Colonel Daniels Drive Property to secure the repayment of the Note (the "Mortgage"). The Mortgage was recorded at the registry of deeds on March 2, 2011. The Debtor did not sign the Mortgage from Stephen to the Defendant. The Debtor testified that she was unaware of the Mortgage until the parties obtained an offer on the Colonel Daniels Drive Property. At that time, the Debtor's realtor informed her that the property could not be sold because there was a lien on it. Until that time, the Debtor was unaware that Stephen had mortgaged his interest in the Colonel Daniels Drive Property to the Defendant. The Debtor testified that she was concerned about the lien and discussed the issue with Stephen who indicated that she should not worry as he would take care of it. At that time the Debtor and Stephen were legally separated. The Debtor believed that the lien was going to be lifted and that she would receive half of the equity in the Colonel Daniels Drive Property upon its sale.

On April 19, 2011, the Debtor and Stephen sold the Colonel Daniels Drive Property to third parties for the purchase price of $598,000.00. The Debtor attended the closing without an attorney. The Defendant did not attend. At the closing the following amounts were paid:

| **Payee** | **Amount** |
|---|---:|
| Various closing costs | $41,810.00 |
| City/town taxes | $670.14 |
| Wells Fargo in full satisfaction of its mortgage | $431,886.15 |
| TD Bank in full satisfaction of its mortgage | $50,285.19 |
| Defendant in satisfaction of his mortgage | $73,348.52 |
| Total | $598,000.00 |

The Debtor was unaware that the Defendant would be getting money at the closing. She thought she would receive fifty percent of the net proceeds of $73,348.52, or $36,674.26. The Debtor testified that she did not consent to the Defendant receiving money at the closing and only signed documents and the deed transferring the property because she "had to sell the home." The Debtor felt she had no other choice than to sign the closing documents. After the closing, the Debtor talked to her divorce attorney to try to obtain her share of the sale proceeds but to no avail.

Less than six months later, on October 17, 2011, the Debtor filed chapter 7 bankruptcy. The Debtor's bankruptcy schedules show that when she filed bankruptcy she owned no real property. She owned personal property worth $104,636.00, which included a "possible claim" of $80,000.00 against the Defendant. The Debtor claimed $21,500.00 of her personal property as exempt. On the Petition Date, creditors held unsecured claims totaling $192,012.81. The Debtor testified that the debt listed on her bankruptcy schedules accurately reflected the debt that she owed as of the date of the closing on the Colonel Daniels Drive Property on April 19, 2011.

During the trial, there was some testimony regarding inventory from the Debtor's store, which closed in July 2010. The Debtor estimated that the inventory was worth $9,000.00. Stephen believed the inventory to be worth $60,000.00. The testimony was unclear, however, as

5

to the date of either parties' valuation.  The Debtor testified that she continued to sell inventory after the store closed and that she used the money she received to pay for the family's living expenses.  It is undisputed that the Debtor did not list any inventory on her bankruptcy schedules.

### III. DISCUSSION

The Trustee seeks to avoid the payment of $36,674.26 from the closing of the Colonel Daniels Drive Property to the Defendant as a constructively fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B) and to recover the amount transferred from the Defendant for the benefit of the bankruptcy estate in accordance with 11 U.S.C. § 550(a)(1).

#### A. Avoidance of the Transfer under 11 U.S.C. § 548

Section 548(a)(1) of the Bankruptcy Code provides in relevant part:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . .
>
>> (B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a)(1); Braunstein v. Crawford (In re Crawford), 454 B.R. 262, 271 (Bankr. D. Mass. 2011).  Pursuant to the provisions § 548(a)(1)(B)(I) and (ii)(I), the Trustee must establish the following:

1. The transfer in question was of an interest of the Debtor in property;

2. The transfer occurred on or within two years of the Petition Date;

6

      3.      The Debtor received less than reasonably equivalent value in exchange for the transfer; and

      4.      The Debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.

11 U.S.C. § 548(a)(1)(B)(I) and (ii)(I); see Crawford, 454 B.R. at 271; Notinger v. Migliaccio (In re Fin. Res. Mortg., Inc.), 454 B.R. 6, 21 (Bankr. D.N.H. 2011); Dahar v. Jackson (In re Jackson), 318 B.R. 5, 23 (Bankr. D.N.H. 2004). As the party seeking to avoid the transfer at issue, the Trustee bears the burden of proof on each element and must discharge that burden by a preponderance of the evidence. Crawford, 454 B.R. at 271; Jackson, 318 B.R. at 23.

### 1. Property and Date of Transfer

The Defendant does not challenge the first two elements of the Trustee's fraudulent transfer claim under § 548(a)(1)(B). It is undisputed that at the closing the Debtor transferred her interest[3] in the proceeds from the sale of the Colonel Daniels Drive Property to the Defendant and that the transfer occurred approximately six months before the Petition Date. Instead, the Defendant challenges the last two elements of the Trustee's fraudulent transfer claim.

### 2. Reasonably Equivalent Value

The Defendant contends that the Debtor did receive reasonably equivalent value in exchange for the transfer of the Debtor's equity in the amount of $36,674.26 to the Defendant. In considering whether the Debtor received reasonably equivalent value, the Court must determine the value of the asset transferred and the value of any consideration the Debtor

---

[3] As a joint tenant, the Debtor's interest was equal to Stephen's interest and therefore she had a one-half interest in the Colonel Daniels Drive Property. Crawford, 454 B.R. at 272; see also Heilman v. Habitech, Inc., Civil No. 11-cv-408-JD, 2012 WL 83856, at *3 (D.N.H. Jan. 11, 2012).

received in return.  Crawford, 454 B.R. at 273.  Pursuant to § 548(d)(2)(A) of the Bankruptcy Code, "value means property, or satisfaction of a present or antecedent debt of the debtor."  Id.

The value of the asset transferred is easily quantified as the Defendant received cash proceeds from the sale in a set amount, $73,348.52, of which the Debtor was entitled to half.  The question is whether the Debtor received any consideration in return for the money.  The Defendant contends that the Debtor used funds from the Note to purchase the Colonel Daniels Drive Property, consented to the granting of the Mortgage, and ultimately received value in the form of a mortgage discharge.

The record is clear that the Debtor did not consent to the granting of the Mortgage and did not even know it existed until shortly before the closing.  At the time the Mortgage was granted, the Debtor and Stephen were in the midst of divorce proceedings and had already decided to sell the Colonel Daniels Drive Property.  The documentary evidence in the record—the actual Note and Mortgage themselves—demonstrate that the Debtor did not sign the Note and did not execute the Mortgage.  As a joint tenant, Stephen could only encumber his undivided one-half interest in the Colonel Daniels Drive Property without the Debtor's consent; he could not encumber the Debtor's undivided one-half interest.  Thus, the record is clear that the Debtor had no legal obligation to repay the Defendant all or any portion of the $150,000.00 the Defendant advanced to Stephen in 2004.  At the time of the transfer, the Debtor had no antecedent debt to repay, which would have constituted value under the Bankruptcy Code.  The fact that Stephen had an antecedent debt, in the form of the Note that needed to be repaid, is irrelevant to the analysis here, as "the payment of another's debt is held to be a transfer without fair consideration."  Heilman, 2012 WL 83856, at *6 (citation and quotations omitted) (emphasis added).  Because the record is clear that the Debtor gave up her half of the proceeds from the

sale of the Colonel Daniels Drive Property in exchange for no consideration at all, the Court finds that the Trustee has established that the Debtor received less than reasonably equivalent value in exchange for the transfer.

### 3. Insolvency

The Defendant further challenges the Trustee's assertion that the Debtor was insolvent on the date of the transfer. The Bankruptcy Code defines the term "insolvent" as "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation" excluding property fraudulently transferred, concealed, or removed and property exempted under 11 U.S.C. § 522. "Under the principle of retrojection, 'where a debtor is shown to be insolvent at a date later than the date of the questioned transfer, and is shown that the debtor's financial condition did not change during the interim period, insolvency at the prior time may be inferred from the actual insolvency at the later date.'" Crawford, 454 B.R. at 273 (quoting In re Arrowhead Gardens, Inc., 32 B.R. 296, 301 (Bankr. D. Mass. 1983) (citations omitted)).

The Debtor indicated in her schedules of assets and liabilities that she owned property worth $104,636.00 on the Petition Date. This amount included the Debtor's "possible claim" against the Defendant in connection with the transfer of the Colonel Daniels Drive Property in the amount of $80,000.00 (representing the approximate amount paid to the Defendant, not just her one-half share). Of the remaining property, the Debtor claimed $21,500.00 as exempt. The Debtor listed liabilities totaling $192,012.81 in her bankruptcy schedules as of the same date. Thus, based on the schedules, the Debtor was insolvent on the Petition Date as her liabilities

9

greatly exceeded her assets.[4] The Defendant introduced testimony from the Debtor and from Stephen that the Debtor may have had inventory remaining from her store that should have been listed on her schedules. Even if the Court were to find that inventory was omitted from her schedules, the evidence in the record is that the inventory was worth no more than $60,000.00. Thus, even if the inventory were included as part of the Debtor's assets, the Debtor was still insolvent on the Petition Date.

The allegedly fraudulent transfer occurred on April 19, 2011. The Debtor testified her financial condition was substantially the same from the date of the transfer until the Debtor filed for bankruptcy six months later. The Defendant did not present any evidence of a significant change in the Debtor's assets or liabilities during the relevant period. Accordingly, the Court finds that the Trustee has established that the Debtor was insolvent on the date of the transfer.

Because the Trustee has satisfied all elements of her fraudulent transfer claim under § 548(a)(1)(B) of the Bankruptcy Code, the transfer of the Debtor's interest in the sale proceeds to the Defendant may be avoided.

### B.      Recovery of the Avoided Transfer under 11 U.S.C. § 550

Section 550 of the Bankruptcy Code establishes from whom a trustee may recover fraudulently transferred assets. Richardson v. United States (In re Anton Noll, Inc.), 377 B.R. 875, 878 (B.A.P. 1st Cir. 2002). "Section 550(a)(1) provides that the trustee may recover fraudulently transferred property or its value from the 'initial transferee . . . or the entity for whose benefit such transfer was made.'" Id. Initial transferees are strictly liable; the trustee may always recover from the initial transferee regardless of the transferee's good faith, value, or lack

---

[4] Assets of $104,636.00 less the $80,000.00 claimed as fraudulently transferred less the exempt property of $21,500.00 results in total assets of $3,136.00. Liabilities totaled $192,012.81.

of knowledge of the voidability of the transfer.  Id. (citing Rupp v. Markgraf, 95 F.3d 936, 938 (10th Cir. 1996)).

The Defendant was the initial transferee of the sale proceeds from the Colonel Daniels Drive Property in this case.  As the initial transferee, the Defendant is strictly liable and must return the money transferred.  Accordingly, the Trustee may recover the funds transferred to the Defendant on account of the Debtor's share of the sale proceeds in the amount of $36,674.26.

### IV.  CONCLUSION

For the reasons set forth above, the Court finds that the Trustee has established by a preponderance of the evidence that the Debtor fraudulently transferred $36,674.26 to the Defendant at the closing of the Colonel Daniels Drive Property and that the transfer may be avoided pursuant to § 548(a)(1)(B) of the Bankruptcy Code.  As the initial transferee, the Defendant must turn over that sum to the Trustee in accordance with the provisions of § 550(a)(1) of the Bankruptcy Code.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   November 10, 2014                    /s/ J. Michael Deasy
                                              J. Michael Deasy
                                              Bankruptcy Judge